UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

AMES RAY,                                          Index No.: 1:18-cv-11211-JMF

                    Plaintiff,

-against-                                          **<u>COMPLAINT</u>**


BALESTRIERE FARIELLO LLP,                          **ECF Case**
JOHN G. BALESTRIERE and JOHN DOES 1-5
                                                   **<u>JURY TRIAL DEMANDED</u>**
               Defendants.


_____



*Counsel for Plaintiff*

David Anziska
**Law Offices of David Anziska**
115 Montague Street, Suite 5A
Brooklyn, NY 11201
Phone (914) 216-3540
Email david@anziskalaw.com

Plaintiff Ames Ray ("Ames" or "Plaintiff") brings the above-captioned action against defendants Balestriere Fariello, LLP, John G. Balestriere ("Balestriere") and John Does 1-5 (collectively, with Balestriere and Balestriere Fariello LLP, the "Defendants").  Plaintiff's allegations are based on the investigation of its counsel, including but not limited to reviews of pertinent documents, such as emails, and interviews with various principal participants, and are thus made on information and belief, except as to individual actions of Plaintiff, as to which Plaintiff has personal knowledge.

## NATURE OF THE ACTION

1.     Defendants represented Plaintiff between October 2010 and December 2015 in two separate lawsuits between Plaintiff and Christina Ray, his ex-wife, and other related parties over a series of fraudulent conveyances she made during 2008 and 2009 to her former counsel and her consulting business in order to avoid paying Plaintiff a debt of at least $974,610.79.

2.     This action arises from Defendants' representation of Plaintiff in his second lawsuit against Ms. Ray for fraudulent conveyance filed in New York Supreme Court following the dismissal of a similar action by the First Department, Appellate Division, in July 2013.

3.     Specifically, beginning in 2013, when Plaintiff was in the process of deciding whether to file a second fraudulent conveyance lawsuit against Ms. Ray, Defendants engaged in a pattern of breaches of fiduciary duty by failing to inform Plaintiff that there was a conflict of interest between them, given their expectation that the projected presiding judge in the case, New York Supreme Court Justice Charles E. Ramos, would impose sanctions against both Plaintiff and Defendants for Plaintiff's filing a second fraudulent conveyance lawsuit and would have to decide how to apportion the sanctions between them.  Plaintiff fully expected the First

Department, Appellate Division, to ultimately overturn any adverse ruling by Justice Ramos, as it had previously done on multiple occasions.

4.     In fact, this conflict of interest would boil over spectacularly in December 2015, when Defendants, on the eve of a sanctions hearing set by Justice Ramos for Plaintiff's filing a second fraudulent conveyance lawsuit, placed their own pecuniary and reputational interests above those of Plaintiff's by repeatedly threatening to withdraw as counsel and disclose confidential and privileged communications between Plaintiff and Defendants to Ms. Ray, in order to strong-arm Plaintiff into settling on adverse terms and not file a lawsuit against Donald E. Watnick and Julie Stark, Ms. Ray's counsel, under New York Judiciary Law § 487 for making a number of deceitful and untruthful misstatements about Plaintiff.

5.     Defendants' actions were rooted in their desperation not to anger Ms. Ray's counsel so that they could settle their client's request for sanctions without requiring Justice Ramos to issue a formal, written decision imposing them on Defendants, thereby protecting their reputations and safeguarding their professional standing.

6.     As a result of Defendants' repeated threats to withdraw as counsel and disclose confidential and privileged communications to Ms. Ray, Plaintiff concluded Defendants had abandoned him and was subsequently forced to find new counsel mere days before the sanctions hearing was held, substantially prejudicing Plaintiff at the hearing while throwing his life into a tailspin.  Justice Ramos ultimately levied sanctions against Plaintiff and Defendants for attorneys' fees and costs, totaling $35,154.53, after previously dismissing Plaintiff's second fraudulent conveyance action against Ms. Ray.  Plaintiff was forced to retain a new counsel, spending thousands of additional dollars, to pursue the appeal of Justice Ramos's sanctions order

and dismissal, which the First Department granted in part and denied in part, vacating the award of sanctions while reaffirming the lawsuit's dismissal on technical grounds.

7.      Compounding problems, Defendants have refused to release to Plaintiff his litigation file, which dates all the way back to 2010, despite repeated requests from Plaintiff and his counsel to do so, prejudicing Plaintiff in filing a third fraudulent conveyance lawsuit against Christina Ray and her consulting company and his appeal of a recent order by Justice Ramos, yet again, dismissing Plaintiff's 1998 action against Ms. Ray and granting her request for attorney fees. Instead, Defendants have attempted to extort Plaintiff, expressly conditioning the return of the ligation file in exchange for Plaintiff paying purported outstanding legal invoices for work done **after** Defendants walked away from Plaintiff and ceased their legal relationship.

8.      In total, Defendants collected hundreds of thousands of dollars for representing Plaintiff in both fraudulent conveyance lawsuits, including tens of thousands of dollars for representing Plaintiff in the second fraudulent conveyance lawsuit.

9.      Accordingly, Plaintiff now asserts claims of breach of fiduciary duty, negligent infliction of emotional distress, conversion and disgorgement of attorney fees against Defendants and multiple violations of New York Rules of Professional Conduct ¶¶ 1.16(e) and 1.7(a)(2). Plaintiff seeks an order requiring that Defendants return his entire litigation file; all relevant monetary damages, including compensatory and punitive damages; the disgorgement of attorney fees paid by Plaintiff to Defendants for representing him in prosecuting the second fraudulent conveyance lawsuit; and any additional relief that this Court deems necessary and appropriate.

## JURISDICTION AND VENUE

10.     The Court has jurisdiction over this action, pursuant to 28 U.S.C. § 1332(a)(1) and § 1348, because the matter in controversy exceeds the sum of $75,000, exclusive of interest

and costs, and during the relevant period Plaintiff and Defendants were citizens of different states.

11.    Venue is proper under 28 U.S.C. § 1391(e)(2) because the events giving rise to Plaintiff's claims took place within the boundaries of the Southern District of New York.

## PARTIES

12.    Plaintiff Ames Ray is a citizen of the State of Texas and was represented by the Defendants between October 2010 and December 2015 in two separate lawsuits he filed against Christina Ray and other related parties over fraudulent conveyances she made in 2008 and 2009. In total, Plaintiff paid Defendants in excess of hundreds of thousands of dollars to represent him.

13.    Defendant Balestriere Fariello LLP is located on 225 Broadway, 29th Floor, New York, New York 10007.  Between 2010 and 2015, it represented Plaintiff on two fraudulent conveyance lawsuits against Christina Ray, Plaintiff's former wife, and other related parties over a series of fraudulent conveyances she made during 2008 and 2009 to her former counsel and her consulting business in order to avoid paying Plaintiff a debt of at least $974,610.79.

14.    Defendant John G. Balestriere is an attorney licensed to practice in the State of New York and is the founding partner of Balestriere Fariello LLP.  Upon information and belief, he is a citizen of the State of New York, and at all times herein he was an employee, agent, associate or principal of Balestriere Fariello LLP.

15.    John Does 1-5 are fictitious names and attorneys at Balestriere Fariello LLP whose identities are unknown at this time, but will be ascertainable in discovery.  At all times here relevant, John Does 1-5 were employees, agents, associates or principals of Balestriere Fariello LLP.

## FACTUAL ALLEGATIONS

A.    **First & Second Fraudulent Conveyance Actions**

16.    Christina Ray is Ames Ray's ex-wife. The two divorced in 1977, though they had business dealings until 1994, including ventures in real estate and a hedge fund.

17.    Ames Ray commenced an action against Christina in 1998 in New York Supreme Court for breaching a series of promissory notes and contracts, resulting in damages of at least $974, 610.79. *See e.g. Ray v. Ray*, Index No. 604381/1998 (NY Sup. Ct., Hon. C.E. Ramos). On October 10, 2018, Justice Charles E. Ramos, based on a July 2017 jury questionnaire, dismissed the 1998 action and further granted Ms. Ray's request for attorney fees. Plaintiff filed his notice of appeal on November 14, 2018 seeking to overturn Justice Ramos's order in its entirety.[1]

18.    Earlier, in March 2008, Justice Ramos dismissed the 1998 action on summary judgment, only to be reversed by the First Department in April 2009.  In 2010, Plaintiff sued Ms. Ray under New York Debtor and Creditor Law ("NYDCL") §§ 273-a and 276 after she encumbered her Manhattan co-op with a mortgage of nearly $500,000 (the "First Fraudulent Conveyance Action").

19.    In an order dated July 14, 2011, Justice Ramos dismissed the First Fraudulent Conveyance Action at the pleading stage, which was affirmed by the First Department, Appellate Division, in an order dated July 13, 2013. *See  Ray v Ray*, 108 A.D.3d 449 (1st Dep't 2013). In affirming the dismissal, the First Department held that the NYDCL § 273-a claim failed because there was no judgment or stay against Ms. Ray when she refinanced her mortgage and

---

[1]To date, the First Department has already overturned Justice Ramos on multiple occasions relating to Plaintiff's 1998 lawsuit against Ms. Ray. *See e.g. Ray v. Ray*, 121 A.D.3d 620, 995 N.Y.S.2d 567 (1st Dep't 2014); *Ray v. Ray*, 61 A.D.3d 442, 876 N.Y.S.2d 383 (1st Dep't 2009).

transferred the proceeds to her former counsel, and the NYDCL § 276 claim failed because it was not pleaded with sufficient particularity. *Id* at 451-52.

20.     Following the dismissal of the First Fraudulent Conveyance Action in July 2013, Plaintiff conferred with Defendants about the prospect of bringing another fraudulent conveyance lawsuit against Ms. Ray and her consulting company, Guarnerius Management, LLC ("Guarnerius").  Plaintiff was prompted to consider bringing a second action after he learned from Ms. Ray that she transferred hundreds of thousands of dollars from her mortgage proceeds to Guarnerius.

21.     In deciding whether to file a second fraudulent conveyance lawsuit, Plaintiff and Defendants were well aware of the prospect that, if Plaintiff were to file in New York Supreme Court, there was a substantial likelihood that Justice Ramos would dismiss the action and impose sanctions on Plaintiff and Defendants. For example, on October 8, 2013, Defendant Balestriere wrote to Plaintiff:

> Following up further here, I simply want to state what you already know: Chris will file a motion for sanctions (either of her own volition, or upon invitation by Judge Ramos).  We must be ready to address both a motion to dismiss and a motion for sanctions, and be ready to appeal an order both granting the motion to dismiss and for sanctions. You know this, but I just want to be perfectly clear: our view is that the claim is of merit, but, as you know, very, very tough.  I expect Judge Ramos to issue a sanctions award against you and our firm, so we must be ready for that.

22.     At no time in considering whether to file a second fraudulent conveyance lawsuit against Ms. Ray and Guarnerius did Defendants apprise Plaintiff of the conflict of interest that existed between the parties, considering that Justice Ramos would have to decide how to apportion sanctions between Plaintiff and Defendants.

23.     On April 23, 2014, Plaintiff sued Ms. Ray and Guarnerius for fraudulent conveyances she made upon encumbering her Manhattan co-op (the "Second Fraudulent Conveyance Action"), asserting three causes of action under NYDCL §§ 273, 276 and 276-a.

24.     By order dated September 15, 2015, Justice Ramos dismissed Plaintiff's first and second causes of action under NYDCL §273 and § 276, pursuant to CPLR 3211(a)(5), based on *res judicata* and collateral estoppel, and all three causes of action under §§ 273, 276 and 276-a for failure to state a claim under CPLR 3211(a)(7), after communicating his intention to do so in a November 12, 2014 hearing.

25.     In the order, Justice Ramos further granted Ms. Ray's request for sanctions, indicating that he would hold a hearing in the months ahead to determine the sanctions' amount and how they should be apportioned between Plaintiff and Defendants.[2]

26.     On November 14, 2014, following Justice Ramos dismissal of the Second Fraudulent Action and imposition of sanctions on Plaintiff and Defendants, Defendants, once again, failed to apprise Plaintiff on the conflict of interest that existed between the parties, given that Justice Ramos would have to decide how to apportion sanctions between Plaintiff and Defendants.   Specifically, Defendant Balestriere stated: "As discussed, we are prepared to handle whatever we must going forward.  Without sounding presumptuous at all, and acknowledging that any further steps in the litigation shall take time and money and potentially cause stress, I am extremely confident that Judge Ramos was dead wrong in granting the sanctions motions and nearly as wrong when he granted the motion to dismiss."

---

[2] Initially, the sanctions hearing was scheduled for December 8, 2015, but was later pushed back to January 11-12, 2016.

27.     Balestriere also raised the prospect of Defendants retaining their own counsel to represent them for the sanctions hearing, writing:

> As also discussed, our firm shall very likely need to hire an attorney to represent our firm in any sanctions proceedings or litigation.  I am not sure exactly how that should work, and we will discuss before we formally engage anyone.  However, I expect that such counsel would formally represent the firm and make arguments on behalf of the firm while we work very closely with such lawyer both to fend off any sanctions against you and to assist the lawyer as he needs (since my view is that your interests and that of the firm are *completely aligned*) [emphasis added].[3]

28.     Thus, instead of advising Plaintiff to retain additional counsel for handling the issue of sanctions, Defendants maintained that their interests and those of Plaintiff were "completely aligned", even though there was a direct conflict of interest between the parties.

**B.     Defendants Abandon Plaintiff on Eve of Sanctions Hearing**

29.     Beginning as early as 2013, Plaintiff was contemplating whether to file a lawsuit, pursuant to New York Judiciary Law ("JL") § 487, against Ms. Ray's counsel, Donald E. Watnick and Julie Stark, for deceitful and defamatory comments they made about Plaintiff while representing Ms. Ray in the 1998 action.

30.     Defendants knew of Plaintiff's intentions to file the JL § 487 action for well over a year, and even considered representing him in the lawsuit. But beginning in December 2015, Defendants changed their tune dramatically, as talks between them and Ms. Ray over settling her claims for her attorney's fees heated up, and Defendants believed they could settle with Ms. Ray before Justice Ramos would have an opportunity to formally impose sanctions against them, thereby protecting their reputations and safeguarding their professional standing.

---

[3]With Plaintiff's acquiescence, Defendants ultimately retained the law firm of Allegaert Berger & Vogel LLP to represent them at the sanctions hearing.

31.     Defendants' frustrations with Plaintiff over Plaintiff's reluctance to capitulate to Ms. Ray's settlement demands boiled over mere weeks before the scheduled sanctions hearing. Specifically, on December 7, 2018, Defendant Balestriere threatened to withdraw as Plaintiff's counsel if Plaintiff went ahead and filed the JL § 487 complaint and further threatened that he would be compelled to disclose privileged communications between him and Plaintiff concerning his vehement opposition to the filing of JL § 487 complaint. ("[I]f you did choose to file the JL 487 claim before the sanctions issue is resolved, either through settlement or completing the hearing, we would very unfortunately be forced to withdraw as your counsel. The high risk to the firm creates a conflict that would regrettably force us to withdraw;" "[G]iven that part of your defense is that you relied on the advice of counsel, there is a significant risk that Judge Ramos could declare attorney-client privilege waived and order us turn over all communications between us. Turning over these emails would be harmful both at the hearing and in the breach of contract case.")

32.     Defendant Balestriere reiterated those sentiments to Frank Raimond, Plaintiff's counsel on the contemplated JL § 487 action, writing on December 8, 2015: "I realize you may not know that after discussions with counsel we unfortunately believe that we will have to move to withdraw if the 487 claim is filed prior to resolution of the sanctions issue. That is because of the potential irreconcilable conflict raised and the possibility that the sanctions hearing will result in our firm being forced to turn over reams of attorney-client privileged communications.  It will be devastating to Ames, as I told him and wrote him yesterday."

33.     On December 18, 2015, Defendant Balestriere in an email to Mr. Raimond persisted with his threats while continuing to implore Plaintiff not to file the contemplated JL § 487 complaint, writing:

[I]f you file now while we are negotiating the sanctions settlement I have every confidence that Watnick will newly seek sanctions against Ames and us for bad faith negotiations. We will then be forced to withdraw and disclose that you ignored my advice and acted against Ames's and our firm's interests. *If you file the complaint I reserve all rights for you to be liable for any costs, including but not limited to, legal fees which our firm shall incur in defending ourselves from a sanctions motion brought upon by your acting against Ames's interests.* Moreover, I expect our exchanges on this settlement and our emails to you will be discoverable. [Emphasis added.]

34.     The settlement discussions with Ms. Ray ultimately collapsed after Defendants, against Plaintiff's direct wishes, offered to settle for $16,000, which would have given Ms. Ray a much-needed infusion of cash to defend herself in the underlying 1998 action.

35.     Following Defendants' threats on December 7, 2015 to withdraw as Plaintiff's counsel and disclose confidential and privileged attorney-client communications to the opposition, Plaintiff concluded that Defendants would be unable to represent him at the upcoming sanctions hearing, especially in light of the fact that he fully intended to file the JL § 487 complaint in the weeks ahead.[4]  As such, he ceased affirmatively communicating with Defendants about litigation strategy, fearing that any such communication would be turned over to opposing counsel.

36.     Defendants' repeated threats to disclose privileged and confidential communications with Plaintiff to Ms. Ray forced Plaintiff to scramble and find an attorney on the eve of the sanctions hearing, throwing his life into a tailspin during the holiday season. Indeed, as Plaintiff lamented to Frank Raimond during this period of time, Defendants' conduct

---

[4]Plaintiff eventually filed the JL § 487 complaint against Ms. Ray's counsel on January 22, 2016, which was dismissed by a federal court in the Southern District of New York and affirmed by the Second Circuit.  *Ray v. Watnick*, 182 F. Supp. 3d 23 (S.D.N.Y. 2016), as amended (May 3, 2016), *aff'd*, 688 F. App'x 41 (2d Cir. 2017)

had left him "high and dry", feeling as though "the sword of Damacles" was hanging over his head.

37.     Ultimately, Plaintiff was able to convince Mr. Raimond to represent him at the hearing, even though Mr. Raimond had minimal opportunity to prepare for it.  However, Plaintiff, in retaining Mr. Raimond on the eve of the hearing, was forced to expend thousands of additional dollars in legal fees so that Mr. Raimond could get up to speed and review the extensive record.

38.     On December 28, 2015, Plaintiff wrote to Defendant Balestriere stating that he had not yet found an attorney to represent him at the upcoming sanctions hearing. Balestriere immediately responded that his firm would do so, despite his repeated threats to withdraw as Plaintiff's counsel and disclose confidential and privileged communications to the opposition.

39.     Tellingly, Plaintiff never responded to Defendant Balestriere's offer, continuing to search for an attorney to represent him at the upcoming sanctions hearing. On January 6, 2016, Plaintiff, once again, informed Defendant Balestriere that he would no longer be representing him on an ongoing basis, writing, "You last month have told me that I need [to find] an attorney to represent me on my fraudulent conveyance lawsuit, that your legal interests are antagonistic to mine, that your emails may go to defendant [Chris Ray], and that you will quit me under the circumstances. As you know, I have spent weeks scrambling to get an attorney to represent me on my fraudulent conveyance lawsuit. I have understood that you have relieved yourself as my counsel." Later that day, he informed Defendant Balestriere that Frank Raimond would be representing him in the upcoming sanctions hearing.

40.     At no time following Defendants' threats made on December 7, 2015, did Plaintiff agree to pay Defendants for legal work performed after that date, and, in fact,

Defendants expressly asserted on January 6, 2016 that they "shall do no further work on your behalf." Yet, Defendants throughout 2016 demanded that Plaintiff pay them over $66,000 in legal bills, including roughly $25,000 for work done between January 2016 and April 2016, when Plaintiff expressly informed Defendants that he had replaced them with Frank Raimond as counsel.

**C.      Plaintiffs' Appeal to First Department**

41.     During the sanctions hearing, Justice Ramos found both Plaintiff and Defendants joint and several liable for Christina Ray's attorney's fees totaling $33,900.53 and $1,254 in costs, and issued a written ruling, dated March 7, 2016, stating as much. Plaintiff subsequently filed his Notice of Appeal before the First Department on April 12, 2016.

42.     In June 2016, after filing their Notice of Appeal in April 2016, Defendants withdrew their appeal of Justice Ramos's order and settled with Ms. Ray, paying her $20,000 for indemnification.

43.     Defendants' settlement with Ms. Ray prejudiced Plaintiff in his appeal before the First Department by giving the impression that Defendants agreed with Justice Ramos's ruling – namely, that the 2014 complaint was facially meritless and filed in bad faith.

44.     Compounding problems, Defendants have refused to turn over to Plaintiff his voluminous litigation file dating back to 2010, which would have been helpful to Plaintiff in his appeal and the prosecution of a third fraudulent conveyance lawsuit, despite repeated requests from Plaintiff to do so.

45.     Rather, Defendants have attempted to extort Plaintiff, expressly conditioning the return of the file in exchange for Plaintiff paying purported outstanding invoices for work done **after** Defendants walked away from Plaintiff and ceased their legal relationship. For example, in

March 2016, Defendants informed Frank Raimond, an attorney for Plaintiff, that they would not work with Plaintiff on proposed revisions to Justice Ramos's sanctions order if Plaintiff did not promptly pay his outstanding legal invoices, and further intimated that if Plaintiff failed to do so Defendants would "retaliate" by enlisting Donald E. Watnick, counsel to Ms. Ray, to submit joint proposed revisions that would shift the predominance of culpability for the sanctions onto Plaintiff.

46.     On February 18, 2018, the First Department vacated Justice Ramos's order imposing sanctions, and also overturned Justice Ramos's dismissal of Plaintiff's first and second causes of action under NYDCL §273 and § 276 on the grounds of *res judicata* and collateral estoppel because the First Fraudulent Conveyance Action had been dismissed "not on the merits but due to pleading defects." *See Ray v. Ray*, 68 N.Y.S. 3d 724, 725 (1st Dep't 2018). Nevertheless, the First Department affirmed the lower court's dismissal on all three causes of action, under §§ 273, 276 and 276-a, for failure to state a claim, pursuant to CPLR 3211(a)(7).[5]

## FIRST CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY

47.     Plaintiff incorporates by reference each and every allegation set forth above as if fully stated herein.

48.     As Plaintiff's counsel, Defendants and each of their members and partners as an entity owed a fiduciary duty to Plaintiff to act at all times in Plaintiff's best interests and have breached this duty by placing their pecuniary and reputational interests above that of Plaintiff's. Defendants breached their fiduciary duties owed to Plaintiff, by, among other things, failing to

---

[5]On August 6, 2018, Plaintiff filed a third fraudulent conveyance lawsuit against Ms. Ray and her consulting company in Federal Court in the Southern District of New York.  *See Ray v. Ray*, et al., Index No. 1:18-cv-07035 (S.D. NY Hon. George B. Daniels).

apprise Plaintiff of the conflict of interest that would exist and, in fact, did exist when Justice

Charles E. Ramos imposed sanctions against Plaintiff and Defendants, and repeatedly

threatening to withdraw as counsel on the eve of a sanctions hearing set by Justice Ramos and

disclose confidential and privileged communications between Plaintiff and Defendants to Ms.

Ray, in order to strong-arm Plaintiff into settling on adverse terms and not file a lawsuit against

Ms. Ray's counsel under New York Judiciary Law § 487 for making a series of deceitful and

untruthful misstatements about Plaintiff.  Defendants' actions were rooted in their desperation

not to anger Ms. Ray's counsel so that they could settle Ms. Ray's request for sanctions without

requiring Justice Ramos to issue a formal, written decision imposing them on Defendants.

49.    As a direct and proximate result of Defendants' multiple breaches of their

fiduciary duty as detailed herein, Plaintiff has suffered irreparable harm, including being placed

at a significant disadvantage in a January 2016 sanctions hearing, where Plaintiff was forced to

retain new counsel on the eve of the hearing, expending thousands of additional dollars so that

the new counsel could get up to speed, and was found joint and several liable with Defendants

for attorneys' fees and costs, totaling $35,154.53, and retaining new counsel, spending thousands

of additional dollars, to pursue the appeal of Justice Ramos's sanctions order and dismissal,

which the First Department granted in part and denied in part, vacating the award of sanctions

while reaffirming the lawsuit's dismissal.

50.    Plaintiff is entitled to recover from Defendants all damages he has suffered as a

consequence of Defendants' acts and omissions as detailed herein, including, but not limited to,

any additional monies Plaintiff has spent on pursuing his partially successful appeal to the First

Department overturning Justice Ramos's order; thousands of additional dollars Plaintiff was

forced to expend when retaining new counsel on the eve of the sanctions hearing; the return of

Plaintiff's litigation file; punitive damages; and any additional relief that this Court deems necessary and appropriate.

## SECOND CAUSE OF ACTION

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

51.     Plaintiff incorporates by reference each and every allegation set forth above as if fully stated herein.

52.     At all relevant times, Defendants, as Plaintiff's personal attorneys, owed Plaintiff a duty to act with reasonable care.  Defendants breached this duty by, among other things, failing to apprise Plaintiff of the conflict of interest that would exist and, in fact, did exist when Justice Charles E. Ramos imposed sanctions against Plaintiff and Defendants, and repeatedly threatening to withdraw as counsel on the eve of a sanctions hearing set by Justice Ramos and disclose confidential and privileged communications between Plaintiff and Defendants to Ms. Ray, in order to strong-arm Plaintiff into settling on adverse terms and not file a lawsuit against Ms. Ray's counsel under New York Judiciary Law § 487 for making a series of deceitful and untruthful misstatements about Plaintiff.  Defendants' actions were rooted in their desperation not to anger Ms. Ray's counsel so that they could settle Ms. Ray's request for sanctions without requiring Justice Ramos to issue a formal, written decision imposing them on Defendants.

53.     Defendants' conduct was both extreme and outrageous in that Plaintiff was forced to scramble and find an attorney to represent him on the eve of the sanctions hearing, throwing his life into a tailspin during the holiday season.  Plaintiff was left with no options but to find a new attorney, since Defendants repeatedly threatened to disclose confidential and privileged communications between Plaintiff and Defendants to Ms. Ray, in order to strong-arm Plaintiff into settling on adverse terms and not file a lawsuit against Ms. Ray's counsel under New York

Judiciary Law § 487 for making a series of deceitful and untruthful misstatements about Plaintiff.

54.     As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered and will continue to suffer significant physical injury, pain and suffering, extreme and severe mental anguish, and emotional distress.

55.     Plaintiff is entitled to recover from Defendants all damages he has suffered as a consequence of Defendants' acts and omissions as detailed herein, including, but not limited to, any additional monies Plaintiff has spent on pursuing his partially successful appeal to the First Department overturning Justice Ramos's order; thousands of additional dollars Plaintiff was forced to expend when retaining new counsel on the eve of the sanctions hearing; the return of Plaintiff's litigation file; punitive damages; and any additional relief that this Court deems necessary and appropriate.

## THIRD CAUSE OF ACTION

### CONVERSION

56.     Plaintiff incorporates by reference each and every allegation set forth above as if fully stated herein.

57.     Defendants have impermissibly retained possession of Plaintiff's litigation file, which dates back to 2010, despite repeated requests by Plaintiff for Defendants to return the entire file. Defendants do not have the right to possess the file, and, as such, have intentionally interfered with and deprived Plaintiff of use of his personal property.  Defendants' actions also constitute a violation of New York Professional Code ¶ 1.16(e), which governs an attorney's obligations to a former client.

58.     As a direct and proximate cause of Defendants' conversion, Plaintiff has suffered and will continue to suffer irreparable harm, since Plaintiff has filed a third fraudulent conveyance lawsuit against Christina Ray and her consulting company in the Southern District of New York and has filed his Notice of Appeal to overturn in its entirety Justice Ramos's order dismissing Plaintiff's 1998 lawsuit against Ms. Ray for breaching a series of promissory notes and contracts and granting Ms. Ray's request for attorney fees.

59.     Plaintiff is entitled to recover from Defendants all damages he has suffered as a consequence of Defendants' acts and omissions as detailed herein.

## FOURTH CAUSE OF ACTION

### DISGORGEMENT OF ATTORNEY FEES

60.     Plaintiff incorporates by reference each and every allegation set forth above as if fully stated herein.

61.     Beginning in 2013, Defendants knew of Plaintiff's intention to file a lawsuit under New York Judiciary Law § 487 against Ms. Ray's counsel for making a series of deceitful and untruthful misstatements about Plaintiff. As such, Defendants were obliged to withdraw as counsel of record had they truly disagreed with Plaintiff's contemplated course of action, and Defendants' failure to do so constitutes a violation of New York Professional Code ¶ 1.7(a)(2), which governs when an attorney should withdraw as counsel due to a conflict of interest. Defendants further violated New York Professional Code ¶ 1.7(a)(2) by, among other things, failing to apprise Plaintiff of the conflict of interest that would exist, and, in fact, did exist when Justice Charles E. Ramos imposed sanctions against Plaintiff and Defendants, and repeatedly threatening to withdraw as counsel on the eve of a sanctions hearing set by Justice Ramos and disclose confidential and privileged communications between Plaintiff and Defendants to Ms.

Ray, in order to strong-arm Plaintiff into settling on adverse terms and not file a lawsuit against

Ms. Ray's counsel under New York Judiciary Law § 487 for making a series of deceitful and

untruthful misstatements about Plaintiff.  Defendants' actions were rooted in their desperation

not to anger Ms. Ray's counsel so that they could settle Ms. Ray's request for sanctions without

requiring Justice Ramos to issue a formal, written decision imposing them on Defendants.

62.     In light of Defendants' multiple breaches of New York Professional Code ¶

1.7(a)(2), Plaintiff is entitled to recover all fees paid to Defendants for representing him in the

Second Fraudulent Conveyance Action, totaling tens of thousands of dollars. Likewise,

Defendants must forgo all purported outstanding invoices for work done after Defendants walked

away from Plaintiff and ceased their legal relationship.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a.      That Defendants be ordered to account for and compensate Plaintiff for all

damages caused by their actions, including compensatory and punitive damages;

b.      That Defendants be ordered to disgorge all fees received from Plaintiff for

representing him in the Second Fraudulent Conveyance Action and be ordered to

forgo all purported outstanding invoices for work done after Defendants walked

away from Plaintiff and ceased their legal relationship;

c.      That Defendants be ordered to promptly return to Plaintiff his entire litigation file,

dating back to 2010;

d.      That Plaintiff be granted pre-judgment and post-judgment interest on the

damages caused by Defendants' acts and omissions as detailed herein; and

e.      That Plaintiff be granted any additional relief as the Court deems just

and proper.

Dated: Brooklyn, New York
        December 3, 2018

                            **LAW OFFICES OF DAVID ANZISKA**

                            By: _____/s/ D. Anziska_____
                                    David Anziska
                                    115 Montague St., Suite 5A
                                    Brooklyn, New York 11201
                                    Email: david@anziskalaw.com
                                    Phone: (914) 216-3540

## DEMAND FOR JURY

Plaintiff hereby demands a jury trial on all causes of action so triable.

Dated: Brooklyn, New York
      December 3, 2018

                **LAW OFFICES OF DAVID ANZISKA**

                By: _____/s/ D. Anziska_____
                    David Anziska
                    115 Montague St., Suite 5A
                    Brooklyn, New York 11201
                    Email: david@anziskalaw.com
                    Phone: (914) 216-3540