UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMES RAY,

                              Plaintiff,

              -v.-

BALESTRIERE FARIELLO LLP,
JOHN G. BALESTRIERE, and
JOHN DOES 1-5,

                              Defendants.

---

18 Civ. 11211 (KPF)

**<u>OPINION AND ORDER</u>**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Ames Ray ("Ray") brings this suit against his former attorney, John G. Balestriere ("Balestriere"), the law firm Balestriere Fariello LLP ("Balestriere Fariello"), and five unnamed attorneys at Balestriere Fariello, alleging causes of action for breach of fiduciary duty, violations of New York Judiciary Law § 487, and conversion. In broad summary, Ray alleges that Defendants, who represented him in filing a fraudulent conveyance action in New York state court, failed to advise him of a conflict of interest that existed when the state court announced that it would hold a hearing to impose sanctions on both Ray and Defendants, and then pursued their own interests despite purporting to represent him. Defendants Balestriere and Balestriere Fariello have moved to dismiss the operative complaint. For the reasons set forth in the remainder of this Opinion, Defendants' motion to dismiss is denied.

## A.    Factual Background

In 1998, Ray commenced an action against his ex-wife Christina Ray ("Ms. Ray") in New York State Supreme Court, New York County, for breaching a series of promissory notes and contracts.  (Compl. ¶ 17; *see also Ray* v. *Ray*, Index No. 604381/1998 (Sup. Ct. N.Y. Cty., Hon. C.E. Ramos) (the "1998 Action")).  The 1998 Action spawned several further lawsuits, including three fraudulent conveyance actions, one of which gave rise to the instant litigation.

In 2010, while the 1988 Action was ongoing, Ray, represented by Defendants, filed his first fraudulent conveyance lawsuit against Ms. Ray (the "First Fraudulent Conveyance Action"); in it, he alleged that Ms. Ray had encumbered her Manhattan co-op with a mortgage of nearly $500,000, in violation of New York Debtor and Creditor Law ("NYDCL") §§ 273-a and 276.  (Compl. ¶ 18).  On July 14, 2011, Justice Ramos dismissed the First Fraudulent Conveyance Action at the pleading stage.  (*Id.* at ¶ 19).  The Appellate Division, First Department, affirmed that order on July 13, 2013.  *See Ray* v. *Ray*, 970 N.Y.S.2d 9 (1st Dep't 2013).  In affirming the dismissal, the First Department held that (i) the NYDCL § 273-a claim failed because there was no judgment or stay against Ms. Ray when she refinanced her

---

[1]    This opinion draws on facts alleged in the Amended Complaint, which is the operative pleading in this case and is referred to in this Opinion as the "Complaint."  ("Compl." (Dkt. #24)).

For ease of reference, the Court refers to the parties' briefing as follows: Defendants' opening brief as "Def. Br." (Dkt. #30); Plaintiff's opposition brief as "Pl. Opp." (Dkt. #35); and Defendants' reply brief as "Def. Reply" (Dkt. #36).

mortgage and transferred the proceeds to her former counsel, and (ii) the NYDCL § 276 claim failed because it was not pleaded with sufficient particularity. *Id.* at 12.

Following the dismissal of the First Fraudulent Conveyance Action in July 2013, Ray conferred with Defendants about the prospect of bringing another fraudulent conveyance lawsuit against Ms. Ray and Guarnerius Management, LLC ("Guarnerius"), a related corporate entity. (Compl. ¶ 20). Ray was prompted to consider bringing a second action after he learned that Ms. Ray had transferred hundreds of thousands of dollars from her mortgage proceeds to Guarnerius. (*Id.*). In deciding whether to bring the second fraudulent conveyance lawsuit, Ray and Defendants believed that, if Ray were to file again in New York County, Justice Ramos would dismiss the action and impose sanctions on both Ray and Defendants. (*Id.* at ¶ 21). In that regard, Balestriere wrote to Ray on October 8, 2013:

> Following up further here, I simply want to state what you already know: [Ms. Ray] will file a motion for sanctions (either of her own volition, or upon invitation by Judge Ramos). We must be ready to address both a motion to dismiss and a motion for sanctions, and be ready to appeal an order both granting the motion to dismiss and for sanctions. You know this, but I just want to be perfectly clear: our view is that the claim is of merit, but, as you know, very, very tough. *I expect Judge Ramos to issue a sanctions award against you and our firm, so we must be ready for that.*

(*Id.* at ¶ 21 (emphasis added)). At no time in considering whether to file a second fraudulent conveyance action against Ms. Ray and Guarnerius did Defendants apprise Ray of a potential conflict of interest that could exist if

3

Justice Ramos were to determine to apportion sanctions between them. (*Id.* at ¶ 22).

On April 23, 2014, Ray, again represented by Defendants, filed suit against Ms. Ray and Guarnerius for fraudulent conveyances she made upon encumbering her Manhattan co-op (the "Second Fraudulent Conveyance Action"), asserting three causes of action under NYDCL §§ 273, 276, and 276-a. (Compl. ¶ 23). On November 12, 2014, Justice Ramos held a hearing at which he announced his intention to dismiss Ray's first and second causes of action under NYDCL § 273 and § 276, based on res judicata and collateral estoppel, and to dismiss all three causes of action for failure to state a claim. (*Id.* at ¶ 24). Justice Ramos also announced his intention to impose sanctions on Ray and Defendants. (*Id.* at ¶¶ 24-26).

Two days after the hearing, Balestriere advised Ray:

> As discussed, we are prepared to handle whatever we must going forward. Without sounding presumptuous at all, and acknowledging that any further steps in the litigation shall take time and money and potentially cause stress, I am extremely confident that Judge Ramos was dead wrong in granting the sanctions motions and nearly as wrong when he granted the motion to dismiss.

(Compl. ¶ 26). Defendants again failed to notify Ray of any conflict of interest. (*Id.*). However, Balestriere did raise the prospect of his firm, Balestriere Fariello, retaining their own counsel to represent them at the sanctions hearing:

> As also discussed, our firm shall very likely need to hire an attorney to represent our firm in any sanctions proceedings or litigation. I am not sure exactly how that

4

should work, and we will discuss before we formally engage anyone. However, I expect that such counsel would formally represent the firm and make arguments on behalf of the firm while we work very closely with such lawyer both to fend off any sanctions against you and to assist the lawyer as he needs (*since my view is that your interests and that of the firm are completely aligned*).

(*Id.* at ¶ 27 (emphasis added)). Defendants did not advise Ray to retain additional counsel for the handling of the sanctions issue. (*Id.* at ¶ 28).

On September 15, 2015, Justice Ramos issued an order memorializing his dismissal of the Second Fraudulent Conveyance Action and stating that the court would schedule a hearing to determine: (i) whether sanctions would be paid; (ii) to what extent sanctions would be paid; and (iii) by whom sanctions would be paid. *Ray* v. *Ray*, Index No. 153945/2014, Dkt. #48 (Sup. Ct. N.Y. Cty. Sept. 17, 2015).

Around the time that Ray decided to file the Second Fraudulent Conveyance Action, he also contemplated filing a lawsuit, pursuant to New York Judiciary Law ("JL") § 487, against Ms. Ray's counsel for purportedly deceitful and defamatory comments counsel made about Ray while representing Ms. Ray in the 1998 Action. (Compl. ¶ 29). The lawyers against whom Ray contemplated bringing the JL § 487 action were the same lawyers representing Ms. Ray in the Second Fraudulent Conveyance Action, and therefore, the same lawyers pursuing the sanctions against Ray and Defendants. (*See id.*). The statute of limitations on a JL § 487 claim would run out at the end of 2015, meaning that Ray would have to file such lawsuit before

the sanctions hearing, which was scheduled for December 8, 2015. (*Id.*).[2]

Defendants had known of Ray's intentions to file the JL § 487 action since May 2014, and briefly considered representing him in that lawsuit. (*Id.* at ¶ 30). However, as the sanctions hearing grew near, Defendants began settlement negotiations with Ms. Ray's counsel over the amount of sanctions they and Plaintiff would pay to Ms. Ray. (*Id.* at ¶¶ 30-31). Recognizing that a new lawsuit against Ms. Ray's lawyers might thwart their efforts to settle the sanctions issue, Defendants began pressuring Ray not to file the JL § 487 suit. (*Id.*).

Defendants ratcheted up the pressure as the sanctions hearing date grew closer. On December 7, 2015, a few weeks before the sanctions hearing, Defendants threatened to withdraw as Ray's counsel if he went ahead and filed the JL § 487 suit. (Compl. ¶ 31). Balestriere also told Ray that if Defendants withdrew, there would be a risk that Justice Ramos would declare the attorney-client privilege to have been waived and order his firm to turn over all communications with Plaintiff. (*Id.*). At this time, Ray ceased affirmatively communicating with Defendants about litigation strategy, fearing that any such communication would be turned over to opposing counsel. (*Id.* at ¶ 35).

On December 8, 2015, Balestriere reiterated his threats to the lawyer Ray had hired to represent him on the contemplated JL § 487 action, Frank Raimond. (Compl. ¶ 32). Balestriere wrote to Raimond:

---

[2]     The sanctions hearing was later adjourned to January 11-12, 2016. (Compl. ¶ 25 n.3).

I realize you may not know that after discussions with counsel we unfortunately believe that we will have to move to withdraw if the 487 claim is filed prior to resolution of the sanctions issue. That is because of the potential irreconcilable conflict raised and the possibility that the sanctions hearing will result in our firm being forced to turn over reams of attorney-client privileged communications. It will be devastating to Ames, as I told him and wrote him yesterday.

(*Id.* at ¶ 32). On December 18, 2015, Balestriere, in an email to Raimond, continued to implore Ray not to file the contemplated JL § 487 action:

[I]f you file now while we are negotiating the sanctions settlement I have every confidence that [Ms. Ray's counsel] will newly seek sanctions against Ames and us for bad faith negotiations. We will then be forced to withdraw and disclose that you ignored my advice and acted against Ames's and our firm's interests. If you file the complaint I reserve all rights for you to be liable for any costs, including but not limited to, legal fees which our firm shall incur in defending ourselves from a sanctions motion brought upon by your acting against Ames's interests. Moreover, I expect our exchanges on this settlement and our emails to you will be discoverable.

(*Id.* at ¶ 33).

The settlement negotiations with Ms. Ray's counsel ultimately collapsed after Defendants, against Ray's wishes, offered to settle for $16,000. (Compl. ¶ 34). On December 28, 2015, Ray wrote to Balestriere stating that he had not yet found an attorney to represent him at the sanctions hearing. (*Id.* at ¶ 38). Balestriere responded that Defendants would represent Ray, despite his repeated threats to withdraw as Ray's counsel. (*Id.*). Ray rejected Balestriere's offer in writing on January 6, 2016:

You last month have told me that I need [to find] an attorney to represent me on my fraudulent conveyance

> lawsuit, that your legal interests are antagonistic to mine, that your emails may go to defendant [Ms. Ray], and that you will quit me under the circumstances. As you know, I have spent weeks scrambling to get an attorney to represent me on my fraudulent conveyance lawsuit. I have understood that you have relieved yourself as my counsel.

(*Id.* at ¶ 39). Later that day, Ray notified Balestriere that he had hired Raimond to represent him at the sanctions hearing. (*Id.* at ¶¶ 37, 39). Hiring Raimond only a few days before the sanctions hearing cost Ray thousands of additional dollars in legal fees. (*Id.* at ¶ 37).

During the sanctions hearing, Justice Ramos found Ray and Balestriere Fariello to be jointly and severally liable for Ms. Ray's attorneys' fees of $33,900.53 and costs of $1,254. (Compl. ¶ 41). Justice Ramos did not order Defendants to turn over any confidential or privileged communications with Ray. (*Id.*).

Both Ray and Balestriere Fariello filed notices of appeal from Justice Ramos's sanctions order. (Compl. ¶ 42). To aid in pursuing his appeal, Ray requested his litigation file from Defendants, which file dated back to 2010. (*Id.* at ¶ 44). Despite his repeated requests, Defendants refused to provide Ray with his litigation file. (*Id.*). To the contrary, Defendants expressly conditioned the return of the file on Ray paying outstanding invoices for work done after the legal relationship between Ray and Defendants ceased. (*Id.* at ¶ 45). In March 2016, Defendants informed Raimond that they would not work with Ray on proposed revisions to Justice Ramos's sanctions order if Ray did not promptly pay his outstanding invoices, and further intimated that if Ray failed to do so,

Defendants would retaliate by enlisting Ms. Ray's counsel to submit joint proposed revisions that would shift the predominance of culpability for the sanctions onto Ray.  (*Id.*).

In April 2016, Balestriere Fariello withdrew its appeal of Justice Ramos's sanctions order and settled with Ms. Ray for $20,000.  (Compl. ¶ 42).  On February 18, 2018, the First Department vacated Justice Ramos's sanctions order, and overturned Justice Ramos's dismissal of Ray's first and second causes of action under NYDCL § 273 and § 276 on the grounds of res judicata and collateral estoppel, finding that the First Fraudulent Conveyance Action had been dismissed "not on the merits but due to pleading defects."  *Ray* v. *Ray*, 68 N.Y.S.3d 724, 725 (1st Dep't 2018).  Nevertheless, the First Department affirmed the lower court's dismissal of all three causes of action for failure to state a claim, pursuant to CPLR 3211(a)(7).  *Id.*

On August 6, 2018, Ray filed a third fraudulent conveyance lawsuit against Ms. Ray and various corporate entities in this District.  *See Ray* v. *Ray*, No. 18 Civ. 7035 (GBD), 2019 WL 1649981 (S.D.N.Y. Mar. 28, 2019).  That case was dismissed for failure to state a claim on March 28, 2019.  *See id.*  Ray appealed that decision to the Second Circuit, where it remains pending.  *See Ray* v. *Ray*, No. 19-1124 (2d Cir. 2019).

**B.**   **Procedural Background**

Ray filed his initial complaint in this action on December 3, 2018.  (Dkt. #1).  The parties appeared before the Court for an initial pretrial conference on March 13, 2019.  (Dkt. #27 (transcript of hearing)).  On April 1, 2019, Ray filed

an amended complaint (the "Complaint"), alleging claims for breach of fiduciary duty, violations of JL § 487, and conversion. (Dkt. #24). Defendants subsequently filed a motion to dismiss the Complaint, as well as a supporting affidavit on May 1, 2019. (Dkt. #29, 30, 31). Ray filed a brief in opposition to the motion to dismiss on May 29, 2019. (Dkt. #35). Defendants filed their reply brief on June 12, 2019. (Dkt. #36).

## DISCUSSION

### A. Motions to Dismiss Under Rule 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in Plaintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)). A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)).

**B.     Analysis**

**1.     The Court Will Not Consider Defendants' Declaration and Exhibits**

As a threshold matter, the Court notes that Defendants have relied upon documents from outside the pleadings in support of their motion to dismiss, including a declaration containing factual assertions and several email exchanges that they attach as exhibits to the declaration.  (*See* Def. Br. 10-12; Declaration of Peter S. Garnett (the "Garnett Declaration" (Dkt. #31))).  Defendants argue that the email exchanges may fairly be considered by the Court because they are quoted in the Complaint and they contradict Ray's allegations.  (*See* Def. Br. 11).  But, as discussed herein, that is not the standard for considering materials provided by the moving party on a Rule 12(b)(6) motion.

"Generally, we do not look beyond facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken." *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (internal quotation marks and alterations omitted).  In certain circumstances, "a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss." *Id.*  However, a document is integral to a complaint where the complaint relies heavily upon its terms and effects.  *Id.*  Mentioning a document in a complaint, and even offering limited quotations is not enough.

*Id.* In most instances where this exception is recognized, the incorporated material is a contract or other legal document. *See id.*

Under this standard, the allegations in Ray's Complaint, which include limited quotations to communications between Ray and Defendants, do not suffice to make the email correspondence "integral" to the Complaint. Thus, the Court does not consider the email correspondence submitted by Defendants in support of the present motion. Nor does it consider the factual assertions made in the Garnett Declaration, for which Defendants provide no justification.

### 2. Ray Has Stated a Claim for Breach of Fiduciary Duty

To plead a claim for breach of fiduciary duty under New York law in the attorney-client context, a former client must plead: (i) that a fiduciary duty existed between plaintiff and defendant; (ii) that defendant breached that duty; and (iii) damages resulted from the breach. *See Whitney* v. *Citibank, N.A.*, 782 F.2d 1106, 1115 (2d Cir. 1986); *Gottsch* v. *Eaton & Van Winkle LLP*, 343 F. Supp. 3d 372, 376 (S.D.N.Y. 2018); *Ulico Cas. Co.* v. *Wilson, Elser, Moskowitz, Edelman & Dicker*, 865 N.Y.S.2d 14, 20 (1st Dep't 2008). Defendants concede that they owed Ray fiduciary duties as his counsel. (*See* Def. Br. 8). Defendants argue, however, that Ray has not alleged a breach of fiduciary duty or resulting damages. (*See id.*).

### a. Ray Has Adequately Alleged That Defendants Breached Their Fiduciary Duties

Ray's Complaint alleges that Defendants breached their fiduciary duties by: (i) failing to apprise him of the conflict of interest that would arise, and did

in fact arise, when Justice Ramos imposed sanctions jointly on Ray and Defendants; (ii) abandoning Ray on the eve of the sanctions hearing; (iii) threatening to disclose confidential and privileged communications to Ms. Ray's counsel; and (iv) threatening to sue Raimond. Ray alleges that Defendants took these actions so that they could settle Ms. Ray's sanctions claim and avoid Justice Ramos issuing a formal written decision sanctioning them, which decision would no doubt harm their reputations and professional standing. In order to prevent Justice Ramos from issuing a written decision, it is alleged, Defendants waged a campaign to prevent Ray from filing a JL § 487 action against Ms. Ray's counsel on the theory that a new lawsuit against Ms. Ray's counsel would hurt Defendants' chances of settling the sanctions claim.

Defendants argue that Ray's allegations are contradicted by the pleadings themselves or are conclusions belied by the facts. Defendants argue that they did not breach their fiduciary duties to Ray because they informed Ray of the potential existence of a conflict of interest as soon as it became clear to them that their interests were no longer aligned. (*See* Def. Br. 9). On Defendants' view of the facts, their interests were aligned with Ray's even after Justice Ramos announced that he would hold a sanctions hearing, because it was in both parties' best interest either to convince the court to lift the sanctions order, or, in the alternative, to minimize the sanctions and protect Ray's interests in the 1998 Action that was proceeding before the same court. (*Id.* at 9-10). Defendants claim that the conflict did not arise until Ray insisted on initiating the JL § 487 action and refused to consider a settlement offer,

13

which conduct Defendants believed to be against both Ray's and their own interests.  (*Id.* at 10).[3]

Defendants misperceive both their roles as fiduciaries and the nature of the conflict.  Rule 1.7 of the New York Rules of Professional Conduct provides that a lawyer shall not represent a client if a reasonable lawyer would conclude that "there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests."  Rule 1.7(a)(2).  "A lawyer who possesses a financial interest in a lawsuit akin to that of a defendant may not, as a general rule, represent the plaintiff in the same action."  *Greene* v. *Greene*, 47 N.Y.2d 447, 452 (1979) (disqualifying law firm that had a "direct and substantial stake in the outcome of the litigation").  That is because the professional judgment of a lawyer should be exercised solely for the benefit of the client and free of compromising influences and loyalties.  *See* Rule 1.7, comment 1.  Such a conflict may be waived, but only upon informed consent of the client.  *See* Rule 1.7(b).

Here, Ray's and Defendants' interests were put in tension when Justice Ramos issued an order stating that he would hold a hearing at which he would determine the amount of sanctions and the parties on whom they would be

---

[3]     Defendants also contend that they could not have breached their fiduciary duties to Ray by refusing to represent him in his JL § 487 suit, because they were not obligated to initiate a new lawsuit on Ray's behalf.  (Def. Br. 13-14).  But, as Ray points out (*see* Pl. Opp. 19), his breach of fiduciary duty claim is premised on Defendants' failure to apprise him of the conflict of interest that existed in Defendants' representation of Ray in the Second Fraudulent Conveyance Action, not on Defendants' failure to represent him in the JL § 487 suit.

imposed.  *See Healey* v. *Chelsea Resources, Ltd.*, 947 F.2d 611, 623 (2d Cir.

1991) ("A sanctions motion attacking the factual basis for the suit will almost

inevitably put the two [i.e., client and lawyer] in conflict."); *Eastway Constr.*

*Corp.* v. *City of New York*, 637 F. Supp. 558, 570 (E.D.N.Y. 1986) ("If attorney

and client disagree about who is at fault and point their fingers at each other,

the interests of the two are now clearly adverse.  The client, therefore, will need

new counsel to represent him against him former counsel in the proceedings to

determine fault.").  At the point at which Justice Ramos issued his written

order, stating that he would hold Ray and/or Defendants liable for filing a

frivolous complaint, it should have been abundantly clear to Defendants that

Ray's and their interests might diverge.  It was incumbent on Defendants to

notify Ray of that potential conflict.

In representing to Ray that their interests were "completely aligned" and

continuing to represent him in name while pursuing their own interests, as

Ray alleges, Defendants violated Rule 1.7 and breached their fiduciary duties to

Ray.[4]  For Ray, the Second Fraudulent Conveyance Action was one chess move

---

[4] Defendants argue that Ray's allegations of motive — Defendants' desire to avoid a
formal sanctions decision — is contradicted by Ray's own pleaded facts.  (*See* Def.
Br. 12).  In support of this argument, Defendants claim that Ray's allegations of
misconduct occurred after (i) Ray had hired new counsel by early December 2015 to file
his JL § 487 claim and (ii) Justice Ramos issued a decision granting sanctions against
the Defendants and Ray on September 15, 2015.  (*See id.* at 12-13).  Pointing out this
timeline does not save Defendants' arguments.  That Ray had hired separate counsel to
represent him in a separate lawsuit does not vitiate Defendants' duties to Ray in the
Second Fraudulent Conveyance Action, and it does not prove that Defendants did not
campaign to prevent Ray from filing to further their own interests.  Similarly, the fact
that Justice Ramos had issued a pro forma order announcing a sanctions hearing, in
deciding Ms. Ray's motion to dismiss the Second Fraudulent Conveyance Action, also
does not show that Defendants were not motivated to minimize the amount of sanctions
imposed on them and to avoid a formal written decision imposing sanctions upon them.

in a decades-long match against Ms. Ray.  His interests, going into the sanctions hearing in the Second Fraudulent Conveyance Action, were not merely to minimize the amount of sanctions imposed on him by Justice Ramos. To the extent that Defendants purported to represent Ray's interests while acting to preserve their own reputation and finances, Defendants breached their fiduciary duties to Ray.  That Ray eventually hired separate counsel to represent him at the sanctions hearing does not absolve Defendants from breaches that arose out of their attorney-client relationship with Ray.

### b.     Ray Has Adequately Alleged That Defendants' Breach Caused Him Harm

Defendants also argue that Ray has not adequately pleaded that Defendants' breach of fiduciary duties proximately caused the complained-of damages.  (*See* Def. Br. 14).  They argue that "[t]o establish the elements of proximate cause and actual damages for a breach of a fiduciary duty claim in the attorney liability context, 'the client must meet the 'case within a case' requirement, demonstrating that 'but for' the attorney's conduct the client would have prevailed in the underlying matter or would not have sustained any ascertainable damages.'"  (*Id.* at 15 (quoting *Weil, Gotshal & Manges, LLP* v. *Fashion Boutique of Short Hills, Inc.*, 780 N.Y.S.2d 593, 596 (1st Dep't 2004))). In contrast, Plaintiff cites to *Milbank, Tweed, Hadley & McCloy* v. *Boon*, 13 F.3d 537, 543 (2d Cir. 1994), in which the Second Circuit rejected the strict "but for" causation and proximate cause tests in favor of the substantial factor test for a breach of fiduciary duty in the attorney-client context.  *See also Gibbs* v. *Breed, Abbott & Morgan*, 710 N.Y.S.2d 578, 584 (1st Dep't 2000) ("[T]he

proponent of a claim for a breach of fiduciary duty must, at a minimum, establish that the offending parties' actions were a substantial factor in causing an identifiable loss." (internal quotation marks omitted)); *see generally Weisman Celler Spett & Modlin, P.C.* v. *Trans-Lux Corp.*, No. 12 Civ. 5141 (JMF), 2013 WL 2190071, at *3 n.2 (S.D.N.Y. May 21, 2013) (recognizing difference in standards).

Regardless of which standard applies, Plaintiff has successfully pleaded causation. Ray's Complaint alleges that, because of Defendants' breach, he was placed at a significant disadvantage at the sanctions hearing; he was forced to expend thousands of dollars to get new counsel up to speed shortly before the hearing; and he had to pursue on his own the appeal of Justice Ramos's sanctions order and dismissal. (Compl. ¶ 49). Defendants respond that because Ray had hired Raimond to represent him in the JL § 487 suit months before the sanctions hearing, he could not have been harmed by Defendants' withdrawal as his counsel. (*See* Def. Br. 15). They contend that Ray does not allege that the outcome of either the sanctions hearing or his appeal would have been different had Defendants not breached their fiduciary duties. (*See id.*). But Ray alleges that he was put at a disadvantage by Defendants' withdrawal as his counsel so close to the hearing, and he alleges monetary harm from having to hire new counsel on such short notice. These

allegations suffice to establish damages. The extent and quantum of damages are factual questions that cannot be determined at this stage.[5]

### 3. Ray Has Stated a Claim Under New York Judiciary Law § 487

Under JL § 487, "[a]n attorney or counselor who … [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party … [i]s guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages." JL § 487. To establish a claim under the statute, "a plaintiff must show, at a bare minimum, 'that defendants: [i] are guilty of deceit or collusion, or consent to any deceit or collusion; and [ii] had an intent to deceive the court or any party.'" *Ray* v. *Watnick*, 182 F. Supp. 3d 23, 28 (S.D.N.Y. 2016) (quoting *Iannazzo* v. *Day Pitney LLP*, No. 04 Civ. 7413 (DC), 2007 WL 2020052, at *11 (S.D.N.Y. July 10, 2007) (concluding that defendant attorneys did not make any intentionally deceitful statements in the underlying litigation, nor did plaintiff allege the statements were egregious or extreme as required)). A civil action under this statute is warranted only where the attorney engaged in a chronic, extreme pattern of delinquency. *Kuruwa* v. *Meyers*, 823 F. Supp. 2d 253, 259-60 (S.D.N.Y. 2011), *aff'd*, 512 F. App'x 45 (2d Cir. 2013) (summary order) (citing *Kaminsky* v. *Herrick, Feinstein LLP*, 870 N.Y.S.2d 1, 8 (1st Dep't 2008)); *Savitt* v. *Greenberg Traurig, LLP*, 5 N.Y.S.3d 415, 416 (1st Dep't 2015) (dismissing JL § 487 claim since "the complaint fails

---

[5]    Because the Court holds that Ray has adequately pleaded a claim for breach of fiduciary duty, the Court does not consider Ray's alternative disgorgement argument. (*See* Pl. Opp. 19-21).

to show either a deceit that reaches the level of egregious conduct or a chronic and extreme pattern of behavior on the part of the defendant attorneys" (internal quotation marks omitted)).[6]

Despite this high threshold, courts have found violations of JL § 487 where a lawyer fails to disclose a conflict of interest to his own client. *See, e.g., Armstrong* v. *Blank Rome LLP*, 2 N.Y.S.3d 346, 346 (1st Dep't 2015) (concluding that complaint stated a cause of action under JL § 487 where it alleged that defendants "concealed a conflict of interest that stemmed from defendant law firm's attorney-client relationship with Morgan Stanley while simultaneously representing plaintiff in divorce proceedings against her ex-husband, a senior Morgan Stanley executive, who participated in Morgan Stanley's decisions to hire outside counsel"); *Izko Sportswear Co., Inc.* v. *Flaum*, 809 N.Y.S.2d 119, 121-22 (2d Dep't 2006) (concluding complaint had stated JL § 487 claim where defendant attorney had been sued for failing to disclose that he had previously represented the plaintiff's creditor in multiple bankruptcy matters).

In *Bounkhoun* v. *Barnes*, No. 15 Civ. 631-A, 2018 WL 1805552 (W.D.N.Y. Apr. 17, 2018), the court concluded that the plaintiff had adequately stated a

---

[6]    In cases in which the attorney is alleged to have made false statements *to the court* that have been alleged to be intentionally deceitful, courts "have concluded that liability attaches under [JL § 487] only if the deceit is 'extreme' or 'outrageous.'" *Ray* v. *Watnick*, 182 F. Supp. 3d 23, 29 (S.D.N.Y. 2016) (citing cases). "By confining the reach of the statute to intentional egregious misconduct, this rigorous standard affords attorneys wide latitude in the course of litigation to engage in written and oral expression consistent with responsible, vigorous advocacy, thus excluding from liability statements to a court that fall well within the bounds of the adversarial proceeding." *Id.* (internal quotation omitted). The reasoning behind this heightened standard does not apply to the case at bar. This is not a case in which a party is suing opposing counsel for alleged misstatements meant to mislead the court, but rather where a plaintiff is suing his own former counsel for statements meant to mislead *him*.

JL § 487 claim against her former attorneys for their representation of her during a lawsuit against her landlord. The plaintiff's complaint alleged that her attorney had failed to communicate a settlement demand to her landlord, had instead issued a patently unrealistic demand to the landlord, and had failed to advise the plaintiff that her landlord's insurance carrier had rejected the settlement offer but remained willing to negotiate. *Id.* at *1-2. The court concluded that "Defendants took a number of steps whose purpose was to increase their chances of a high fee recovery, rather than to settle the case for the figure the Plaintiff desired." *Id.* at *6. It explained that

> failing to communicate over the course of many months about possible settlement; ignoring the Plaintiff's request to seek a settlement closer to the insurer's original settlement offer; sending a "patently unreasonable" demand letter that accused the insurer of negotiating in bad faith; most critically, failing to tell the Plaintiff about the insurer's offer to continue settlement discussions, particularly when the Plaintiff's requested settlement figure ($150,000) and the insurer's original settlement figure ($100,000) were relatively close; and telling the non-English speaking Plaintiff, with inadequate explanation, to sign a high-low agreement that would guarantee the Plaintiff a recovery that was barely enough to cover the Defendants' costs and expenses

constituted a "chronic and extreme pattern of legal delinquency." *Id.*

Ray alleges that Defendants violated JL § 487 by engaging in a comprehensive scheme to deceive him by, *inter alia*, (i) threatening to disclose confidential and privileged communications between Plaintiffs and Defendants to Ms. Ray and her counsel; (ii) threatening to sue Frank Raimond, Plaintiff's counsel on a contemplated JL § 487 lawsuit against Ms. Ray's counsel; and

(iii) attempting to settle Ms. Ray's request for attorneys' fees for $16,000 against Plaintiffs' expressed wishes that it be settled for $3,500, bonded pending appeal.  (*See* Pl. Opp. 21).  Ray argues that Defendants deceived Ray into believing that they were representing his best interests, when they were actually taking steps to avoid Justice Ramos issuing a formal, written decision imposing sanctions on them.  (*Id.*).

When Ray and Defendants first contemplated bringing the Second Fraudulent Conveyance Action, Defendants advised Ray that Justice Ramos was likely to dismiss the action and award sanctions.  On October 8, 2013, Balestriere told Ray, "[w]e must be ready to address both a motion to dismiss and a motion for sanctions, and be ready to appeal an order both granting the motion to dismiss and for sanctions." (Compl. ¶ 21).  At that time, Defendants did not apprise Ray of a potential conflict of interest.  (*Id.* at ¶ 22).  Even after Justice Ramos dismissed the Second Fraudulent Conveyance Action on September 15, 2015, and announced that he would hold a hearing on sanctions, Defendants still failed to apprise Ray of the conflict of interest.  (*Id.* at ¶¶ 24, 26).  Defendants hired their own counsel to represent them at the sanctions hearing, while simultaneously telling Ray that their interests were "completely aligned." (*Id.* at ¶ 27).  These allegations suffice to show that Defendants intended to deceive Ray into believing that they were representing his best interests.

All the while, however, Defendants were acting in their own interest — pursuing settlement with Ms. Ray's attorneys to forestall Justice Ramos

formally imposing sanctions against them.  Not only did Defendants act in their own best interest, without advising their client of the conflict of interest, but they also took actions expressly adverse to Ray:  Defendants threatened to sue the attorney representing Ray in the JL § 487 suit against Ms. Ray's attorneys; threatened to withdraw as Ray's counsel for the upcoming sanctions hearing; and threatened to disclose their confidential and privileged communications. These actions are enough to establish that Defendants engaged in a chronic, extreme pattern of delinquency.[7]

Defendants also argue that Ray has not adequately pleaded that the alleged deceitful conduct caused Ray any injury.  (*See* Def. Br. 19).  However, Ray claims that he paid thousands of dollars to retain new counsel on the eve of the sanctions hearing and additional monies on his partially successful appeal to the First Department overturning the sanctions order.  Defendants' arguments regarding the quantum of damages Ray suffered is a factual matter that cannot be resolved at this stage.

---

[7]    The cases cited by Defendants, in which courts found that the deceit was not extreme or outrageous, are more traditional legal malpractice actions in which parties sued their former attorneys for rendering poor advice or providing poor services.  *See Savitt* v. *Greenberg Traurig, LLP*, 5 N.Y.3d 415, 416 (1st Dep't 2015) ("[T]here are no factual allegations from which to infer that the attorneys knew that their advice to plaintiffs[,] that there were no meritorious claims they could have asserted against Janis and Designs in the prior lawsuit, was false, and thus, that they knowingly and intentionally misled plaintiffs into releasing Janis and Designs from all claims in the course of settling that lawsuit."); *Englert* v. *Schaffer*, 877 N.Y.S.2d 780, 781 (4th Dep't 2009) (concluding that failure to inform client of settlement offer is not sufficiently egregious to state a JL § 487 claim).  They were not cases in which the plaintiffs alleged that their counsel failed to disclose a conflict of interest or took actions expressly adverse to them.

22

### 4. Ray Has Stated a Claim for Conversion

Under New York law, "[c]onversion is any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property." *Schwartz* v. *Capital Liquidators, Inc.*, 984 F.2d 53, 53-54 (2d Cir. 1993). "Where the original possession is lawful, a conversion does not occur until the defendant refuses to return the property after demand or until he sooner disposes of the property." *Id.*; *see generally Thyroff* v. *Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283 (2007).

Ray contends that Defendants are liable for conversion because Defendants have retained possession of his litigation file, which dates to 2010, despite his repeated requests for Defendants to return the entire file. (*See* Compl. ¶ 57). Defendants argue that Ray does not have a possessory right to his file because Defendants have a valid retaining lien against Ray (*see* Def. Br. 21), which lien "entitles an attorney to keep, as security against payment of fees, all client papers and property, including money, that come into the attorney's possession in the course of employment, unless the attorney is discharged for good cause," *Resolution Trust Corp.* v. *Elman*, 949 F.2d 624, 626 (2d Cir. 1991). In support of the factual assertion that Ray has an unpaid balance with Defendants, Defendants cite to the allegation in the Complaint that Ray was billed for over $66,000 for legal work performed after December 7, 2015. (*See* Def. Br. 21 (citing Compl. ¶ 40)).

However, Ray's Complaint states facts sufficient to show that his legal relationship with Defendants terminated before December 7, 2015, and that he therefore does not owe them money for legal work performed after that time. Ray claims that by December 7, 2015, Balestriere had already threatened to withdraw as Ray's counsel if Ray went ahead and filed the JL § 487 complaint and threatened to disclose confidential and privileged communications between them. (Compl. ¶¶ 31-32). At this time, Ray ceased affirmatively communicating with Defendants about litigation strategy, fearing that such communications would be turned over to opposing counsel. (*Id.* at ¶ 35). Further, Ray alleges that on January 6, 2016, Defendants expressly asserted that they would do no further work on his behalf, yet Defendants now demand that he pay them $25,000 for work performed between January and April 2016. (*Id.* at ¶ 40). Thus, Ray's conversion claim cannot be dismissed at this stage on the grounds that Defendants maintain a retaining lien on his litigation file.

Defendants' other argument for dismissal of the conversion claim is that Defendants do not have dominion over Ray's file to the exclusion of Ray. (*See* Def. Br. 22-23). In support of this argument, Defendants claim that while they represented Ray, they always provided him with copies of the documents comprising his file, and that the majority of the documents are publicly filed. (*Id.* at 22). Defendants' argument is unconvincing for two reasons. *First*, it is predicated on factual assertions that go well beyond the four corners of the Complaint. And *second*, Ray's litigation file consists of more than just the

documents that have been publicly filed.  It also consists of "any documents possessed by the lawyer relating to the representation."  *Matter of Sage Realty Corp.* v. *Proskauer Rose Goetz & Mendelsohn*, 91 N.Y.2d 30, 35 (1997) (emphases omitted).  Thus, Ray's conversion claim cannot be dismissed on this ground.

## CONCLUSION

For the reasons stated in this Opinion, Defendants' motion to dismiss is DENIED.  The Clerk of Court is directed to terminate the motion at docket entry 29.  On or before **November 6, 2019**, Defendants shall file a responsive pleading.  On or before **November 22, 2019**, the parties shall submit a proposed Case Management Plan, as well as the joint status letter contemplated by the Plan.

SO ORDERED.

Dated:     October 16, 2019
           New York, New York

_____
       KATHERINE POLK FAILLA
       United States District Judge